# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND PAYNE,<br>    Plaintiff | )<br>)<br>) |
| vs. | ) C.A. No. 07-154 Johnstown<br>) District Judge Cohill<br>) Magistrate Judge Baxter |
| CATHERINE BAKER KNOLL, et al.,<br>    Defendants. | )<br>) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendant's motion to dismiss amended complaint [Document # 15] be granted.

### II.    REPORT

#### A.     Relevant Procedural and Factual History

Plaintiff Raymond Payne, presently incarcerated at the State Correctional Institution at Somerset, Pennsylvania, originally filed this *pro se* civil rights action on or about April 2, 2007, in the Court of Common Pleas of Somerset County, Pennsylvania.  Named as Defendants are: Catherine Baker Knoll, Lieutenant Governor and Chairperson of the Pennsylvania Board of Pardons ("Knoll"); Pennsylvania Board of Pardons ("PBP"); and Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections ("Beard").  The case was subsequently removed to this Court by Defendants Knoll and PBP pursuant to a Notice of Removal dated June 22, 2007. [Document # 1].  Defendant Beard filed a "Notice of Consent to Removal" on July 9, 2007. [Document # 7].

In his original complaint, Plaintiff claims that he is unable to apply for clemency/pardon of the life sentence he received in 1977 for the murder of a sixteen-year old girl, because Defendants have refused to conduct DNA tests that would allegedly prove that he did not rape

1

his victim.[1] In particular, Plaintiff states that:

> since [he] has been labeled a rapist as well as a murderer and has been constantly urged to take sex-therapy programs in prison, that unless the sex-criminal status is removed from his records, he would be unable to apply for commutation considering that he did not commit such acts he would deny committing such acts which would be contrary to what the records show and thus the Pennsylvania Board of Pardons decision would be based upon 'tainted' information and there are tests available to remove that tainted evidence from his records and to deny plaintiff access to the tests so requested is a violation of Due Process.

(See Complaint at p. 5).

In response to the original complaint, Defendants filed a motion to dismiss, arguing, *inter alia*, that this Court does not have subject matter jurisdiction to adjudicate Plaintiff's claim, based upon the Rooker-Feldman doctrine.[2] [Document # 8]. Plaintiff then filed an Amended Complaint, purporting to change the nature of this action from a § 1983 claim to an action in mandamus, while re-stating the same allegations and continuing to seek the same relief, i.e., an order requiring the release and testing of the DNA evidence obtained from the murder victim. In response to the Amended Complaint, Defendants filed another motion to dismiss, essentially re-stating the arguments set forth in their original motion to dismiss.[3] [Document # 15]. Plaintiff has since filed a response to Defendants' motion to dismiss.

---

[1] Plaintiff pleaded guilty in 1977 to a general charge of homicide. (See Document # 9, Exhibit A). After a Degree of Guilt hearing, the Court of Common Pleas of Erie County, Pennsylvania, found the Plaintiff guilty of murder in the first degree, and he was sentenced to life imprisonment. (Id.). During the Degree of Guilt hearing, evidence was presented that seminal acid phosphate, a compound found only in semen, was found in the victim's vaginal and anal areas. (See Complaint, Exhibit E). At the time, DNA testing was not available. Plaintiff maintains that he did not rape or sexually assault the victim.

[2] The Court notes that Plaintiff previously filed a substantially similar complaint with this Court on August 12, 2004, at Docket No. 04-199 Johnstown, in which Plaintiff sought DNA testing to prove that he did not rape his murder victim to avoid suffering hardship in prison due to the threats, harassment and discrimination "because of sex crime stigma." (See Document # 9, Exhibit A at p. 2). That action was ultimately dismissed based on lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. (Document # 9., Exhibit C).

[3] Due to the filing of Plaintiff's Amended Complaint and Defendants' motion to dismiss the Amended Complaint, Defendants' motion to dismiss the original complaint was dismissed as moot.

2

[Document # 17]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Subject Matter Jurisdiction - F.R.C.P. 12(b)(1)

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction which attacks the complaint as deficient on its face, the Court must take all allegations in the complaint as true. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891(3d Cir. 1977). However, when the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. Id. at 891. See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3rd Cir. 2000); Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J. 2000).

In Mortensen, the Third Circuit delineated the standard of review to be used in a 12(b)(1) motion, as opposed to a motion under 12(b)(6), stating:

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6) alone necessitates a ruling on the merits of the claim, the others deal with procedural defects. Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. . . .
>
> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56 . Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff

3

will have the burden of proof that jurisdiction does in fact exist.

549 F.2d 884, 891. Accordingly, no presumptive truthfulness attaches to Plaintiff's allegations regarding subject matter jurisdiction.

### 2. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

4

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C. Discussion
#### 1. Rooker-Feldman Doctrine

Defendants argues that "'if Plaintiff were to prevail on his claim, i.e., that he is entitled to DNA testing pursuant to state law, then this Court would necessarily be finding that the state court was wrong and 'would render [the state court] judgment ineffectual,'" in violation of the Rooker-Feldman doctrine. (Document # 9, Defendants' Brief, at p. 4, quoting this Court's Report and Recommendation filed in Payne v. Foulk, Docket No. 03:04-cv-1999, at p. 6).

Under the Rooker-Feldman Doctrine,[4] federal courts are prohibited "from exercising 'subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are inextricably intertwined with the state court's [decision] in a judicial proceeding.'" Ernst v. Child and Youth Services of Chester County, 108 F.3d 486, 491 (3d Cir. 1997), cert. denied, 522 U.S. 850, 118 S.Ct. 139 (1997)(quoting FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996))(internal citations omitted).

Defendants argue that, in this case, Plaintiff is attempting "to circumvent the application of the Rooker-Feldman doctrine, which this Honorable Court has already utilized to dismiss his prior action, by referencing his right to apply for clemency/pardon." (Document # 9 at p. 4). The Court agrees. As Defendants correctly note, "[i]n essence and in spirit, the instant action seeks a determination that the state court decision was wrong – a determination that he is entitled to DNA testing." (Id.).[5] As a result, Plaintiff's claims implicate the validity of, and are inextricably intertwined with, the state court rulings. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims, and this case should be dismissed.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants motion to dismiss amended complaint [Document # 15] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a

---

[4] This doctrine arises out of the decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983).

[5] The Court notes that the state courts have previously rejected Plaintiff's claims that he is entitled to DNA testing pursuant to 42 Pa.C.S. § 9543.1. (See Document # 9, Exhibit A at p. 6).

6

waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: February 28, 2008

cc: The Honorable Maurice B. Cohill
United States District Judge